## Commonwealth v. McDermott, Appellant (No. 2).

*Criminal law—Oleomargarine—Second offense—Verdict—Sentence—Act of May 29, 1901, P. L. 327.*

Where a person is found guilty by a jury of violating the oleomargarine Act of May 29, 1901, P. L. 327, but is not sentenced, the mere verdict of guilty does not establish a conviction within the meaning of sec. 7 of the act, and if such person commits a second offense before he has been sentenced for the first offense, and is tried therefor and a verdict rendered against him, he cannot be sentenced to the penalties imposed by the act for a second conviction.

Argued Oct. 26, 1908. Appeal, No. 196, Oct. T., 1908, by defendant, from judgment of Superior Court, April T., 1908, No. 203, affirming judgment of Q. S. Washington Co., Feb. T., 1908, No. 159, on verdict of guilty in case of Commonwealth v. M. M. McDermott. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Appeal from the Superior Court.

The opinion of the Supreme Court states the case.

*Error assigned* was the judgment of the Superior Court affirming the judgment of the court of quarter sessions sustaining a verdict of guilty against the defendant.

*Owen C. Underwood,* with him *John M. Haverty* and *R. H. Meloy,* for appellant.—Conviction means a judgment and not merely a verdict: Smith v. Com., 14 S. & R. 69; Rauch v. Com., 78 Pa. 490; People v. Butler, 3 Cowen (N. Y.), 347.

*Alex. M. Templeton,* with him *C. L. V. Acheson,* district attorney, and *Cyrus Gordon,* for appellee.—Sentence on a verdict of guilty is not essential to conviction, in order to support a conviction for a second offense, where it is imposed before trial and averred in the indictment: Wright v. Donaldson, 158 Pa. 88; York County v. Dalhousen, 45 Pa. 372; Macdonald v. Schroeder, 28 Pa. Superior Ct. 128.

OPINION BY MR. JUSTICE BROWN, April 12, 1909:

M. M. McDermott was tried and found guilty in the court of quarter sessions of Washington county on November 21, 1907, on an indictment charging him with having sold oleomargarine in violation of the Act of assembly of May 29, 1901, P. L. 327. Motions were made in arrest of judgment and for a new trial, which were overruled on January 31, 1908, and on February 10, 1908, he was sentenced for a first offense under the statute. On January 30, 1908, complaint was made against him, charging him with having unlawfully sold oleomargarine on December 11, 1907, in violation of the act of 1901, and averring that he had previously been convicted of a similar offense at the preceding November Term of the court of quarter sessions of the county. On February 11, 1908, a true bill was returned against him, containing a count that his sale of oleomargarine on December 11, 1907, was his second offense under the statute, as he had been found guilty of having unlawfully sold that article on November 21, 1907, and, on the

verdict of the jury, had been sentenced on February 10, 1908, to pay a fine of $200 and costs. On the indictment charging the second offense the appellant was found guilty, and, after a motion in arrest of judgment was overruled, was sentenced to pay a fine and undergo imprisonment in accordance with the provisions of sec. 7 of the act of 1901. The court below was of opinion that the verdict of guilty, returned November 21, 1907, was, in itself, without judgment upon it, a conviction within the meaning of the act of assembly, and if the defendant subsequently before judgment on the verdict, unlawfully sold oleomargarine, he was guilty of a second offense within the meaning of the statute, but that, even if this was not correct, he had been sentenced the day before the bill was returned, charging him with the commission of the second offense. On appeal to the Superior Court this view was sustained, and, on the appeal to us, the question for our consideration is, whether one can be convicted of a second offense under the act of 1901, if, before the time of the alleged commission of that offense, he had not been subjected to judgment on a verdict finding him guilty of a first offense of the same kind.

The sale of oleomargarine, when colored in imitation of butter, is made a misdemeanor by the act of 1901, carrying with it punishment by a fine or imprisonment. A distinct and substantive offense under that act is the sale of colored oleomargarine by one who had previously so offended against the law, and the punishment for this offense is fine and imprisonment. This, of course, means a sale after a former conviction of the same offense, for a law can never be judicially said to have been offended against until the offense against it is established in a court of competent jurisdiction.

The word "conviction" has a popular and a legal meaning. In common parlance a verdict of guilty is said to be a conviction: Smith v. Com., 14 S. & R. 69; Wilmoth v. Hensel, 151 Pa. 200; and this popular meaning has been given to it when rights other than those of the one who has been found guilty have been before the courts. Such are the cases relied upon by the Superior Court in affirming the judgment below. In York County v. Dalhousen et al., 45 Pa. 372, the question was as to

the liability of the county to pay costs after there had been a verdict of guilty against a defendant who was pardoned before sentence; and so of Wright v. Donaldson et al., 158 Pa. 88, in which Wright, the plaintiff, sued for his fees as a witness on behalf of the commonwealth upon a trial of a prisoner found guilty of a misdemeanor. But a very different situation is presented when one is confronted with an indictment charging him with a prior conviction of a similar offense and the statute makes his alleged repetition of it a distinct crime, for which, upon conviction of it, severer penalties are to be imposed. In such a case the word "conviction" must be given its strict legal meaning of judgment on a plea or verdict of guilty. The severer penalty is imposed by the legislature because that imposed for the first offense was ineffectual. The second offense, carrying with it severer penalties is, therefore, not committed in law until there has been judgment for the first. "When a statute makes a second offense felony, or subject to a greater punishment than the first, it is always implied that such second offense ought to be committed after a conviction for the first; for the gentler method shall first be tried, which, perhaps, may prove effectual:" Hawkins's Pleas of the Crown, ch. 40, sec. 3. "Clearly the substantive offense, which draws to itself the greater punishment, is the unlawful sale after a former conviction. This, therefore, is the very offense he is called upon to defend against. He cannot complain if, after suffering a former conviction and sentence, he commits a second offense of the same kind:" Rauch v. Com., 78 Pa. 490.

The offense of which the appellant was convicted on this indictment was committed on December 11, 1907. It is not to be doubted, for the jury have so found, that on that day he unlawfully sold oleomargarine and offended against the act of 1901 in selling it; but this indictment does not charge him with that mere offense. He is charged with another and distinct one—the unlawful sale of the article after having been once before convicted on the charge of having unlawfully sold it. If he was guilty of this separate, substantive offense, his guilt was complete on December 11, 1907. Nothing that he subsequently did nor anything that was subsequently done in a pros-.

ecution then pending against him could have made his simple sale of colored oleomargarine on December 11, 1907, the separate and distinct offense for which he was indicted. Unless at that time it had been judicially determined that he had sinned once before, he was not guilty of a second offense. On that day there was no such determination. On the contrary, his motion for a new trial and in arrest of judgment were in the hands of the court, which, later on, might have awarded him another trial, to be followed by an acquittal. If he had been tried on the second indictment, with the motion for a new trial pending, could the court have allowed him to be convicted on the count charging him with the second offense? It is no answer to this, that before he was tried sentence had been passed on the first indictment, for, in the end, he was tried for what he did on December 11, 1907, when, if at all, his offense was committed, and that was just two months before the court finally disposed of the first indictment against him by entering judgment upon the verdict. Before that time no one could tell whether he had been guilty of a first offense. In Com. v. Kiley, 150 Mass. 325, the court had before it for consideration a statute which provided that the conviction by a court of competent jurisdiction of a person licensed to sell intoxicating liquors should in itself make his license void, and it was said: "Nothing less than a final judgment, conclusively establishing guilt, will satisfy the meaning of the word 'conviction' as here used. At any time before a final judgment of the court, a motion in arrest of judgment may be made, or the verdict may be set aside upon a motion for a new trial, on the ground of newly discovered evidence, or for other good cause; and upon further proceedings it may turn out that the defendant is not guilty. At the time of the sale relied on in the present case, the verdict of the jury in the former trial had not been followed by a judgment, and the defendant had not been convicted within the meaning of this statute." In the very recent case of People v. Fabian, 192 N. Y. 443, the indictment charged the defendant with the crime of knowingly voting at an election, "not being qualified therefor." By the election laws of the state of New York no person who has been "con-

victed" of a felony shall register or vote unless he shall have been pardoned and restored to the rights of citizenship. The indictment against Fabian set forth the fact that he had been previously indicted for burglary in the first degree, and, upon his trial, a verdict of guilty had been rendered against him, but it did not appear that judgment had ever been entered upon the verdict. The court of appeals, in sustaining the demurrer to the indictment, said: "Where the reference is to the ascertainment of guilt in another proceeding, in its bearing upon the status or rights of the individual in a subsequent case, then a broader meaning attaches to the expressions, and a 'conviction' is not established or a person deemed to have been 'convicted' unless it is shown that a judgment has been pronounced upon the verdict." At common law one convicted of an infamous crime was disqualified from testifying, but he was not deemed to have been convicted unless the record showed the rendition of judgment upon the verdict. It was the judgment, and that alone, which was received as legal and conclusive evidence of the party's guilt for the purpose of rendering him incompetent to testify: 1 Greenleaf on Evidence, sec. 375. "When the law speaks of conviction, it means a judgment, and not merely a verdict, which, in common parlance, is called a conviction:" TILGHMAN, C. J., in Smith v. Com., 14 S. & R. 69. "When conviction is made the ground of some disability or special penalty, a final adjudication by judgment is essential:" Com. v. Miller, 6 Pa. Superior Ct. 35.

As the judgment of the court of quarter sessions on the second count of the indictment must be reversed for the reasons stated, the other questions raised by the assignments of error need not be considered. So much of the sixteenth assignment as complains of the sentence imposed upon the appellant, is sustained, and said sentence or judgment is reversed.