Berliner, Appellant, v. Schoenberg et al.

Argued October 25, 1934.

Before Trexler, P. J. Keller, Cun-
ningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Abraham Wernick,* for appellant.

*Abraham L. Freedman,* and with him *James L. Stern,* of *Wolf, Block, Schorr & Solis-Cohen,* for execution plaintiff, appellee.

OPINION BY PARKER, J., April 15, 1935:

The Schoenberg Leather Company, having judgment against A. Berliner, Inc., caused a levy to be made on certain chattels as the property of the defendant when Jennie Berliner made claim to the goods. A rule for an interpleader was made absolute; the claimant filed a statement of claim, and the Schoenberg Leather Company, execution plaintiff, replied with an affidavit of defense. The issue having been thus framed, the case was called for trial and the jury found for the plaintiff in the execution, and claimant has appealed to this court now complaining of a refusal of her motion for a new trial, her motion for judgment on the record having been abandoned on argument at bar.

The claimant relied on her own testimony and that of her husband, Abraham Berliner, as well as that of a third party, with whose testimony we are not now concerned, to sustain the burden on her to show title to the property in question. She first complains of the action of the trial judge in permitting certain questions to be asked on cross-examination of the husband, A. Berliner, as to whether he had not, in 1928, made a false claim against the estate of his former wife, and the claim had been adjudicated against him by the orphans' court of Philadelphia on the ground that he was guilty of fraud and did not come into court with clean hands. While there were some objections to these questions, no exception was taken to the rulings of the trial judge. The assignments of error covering these matters will therefore not be considered by us.

Appellant next complains of the admission in evidence of certain records of the orphans' court of Philadelphia which were received over the objection and subject to the exception of the claimant. The offer of the record was to show that Abraham Berliner made a claim for $34,551.51 from his former wife's estate on the ground that he had given it to her to take it out of the reach of his creditors, and that Judge Stearne having found that to be an admitted fact said "that Abraham Berliner had come into court with unclean hands and he, himself, showed a fraudulent action and therefore the court would give him no relief." The express purpose of the offer was to contradict the previous testimony of Abraham Berliner on cross-examination, to which we have referred. The following extracts from the record show the rulings of the court: "The Court: That is admitted with the direction that it is only admitted for the purpose stated, namely, as affecting the credibility of the witness, Abraham Berliner. Is that your reason? Mr. Freedman: Yes, sir. That is the only purpose for which I offer it. The Court: Otherwise, it is plainly immaterial, but you may read it to the jury. (Objected to.) (Objection overruled.) (Exception for the Claimant.) Mr. Finestone: That is as to both the check and the reading of excerpts from the adjudication. The Court: Yes, they are both together. I will say, further, that they have nothing to do with this particular case except to help me in determining whether the witnesses are telling me the truth. They are only admitted for the purpose of assisting the jury in determining what we call the credibility of the witness, Abraham Berliner, and the credibility of the Claimant."

We are unable to agree with the contention of appellee that the record does not show an exception,

to the rulings. The question now presented was fairly raised in the court below and an exception noted to the ruling and is not an example of a case where one objecting to testimony apparently acquiesces in the ruling by his failure to have an exception noted. The objection was a general one but was entered after the trial court had limited the offer to the extent that it affected the credibility of the witness. It will not do to say that the objection was alone to reading the record to the jury and not to its admission for the objection is not so limited nor is that the fair inference to be drawn from the record as presented to us. In fact, the harm done was in acquainting the jury with the findings of Judge STEARNE.

We assume that the trial court was of the opinion that the record of the orphans' court received in evidence affected the credibility of the witness in two respects: first, that it contradicted a statement of the witness on cross-examination, in other words, that he had sworn differently from the fact; and, second, that the adjudication in the orphans' court by the auditing judge wherein he had rejected a claim of Abraham Berliner on the grounds that he had been guilty of a fraud and did not come into court with clean hands showed a particular instance of misconduct, from each of which facts the jury were asked to infer in the present case that the witness and his present wife were not worthy of belief and were of such character that they would connive and collude to defraud his creditors as here charged. We will consider both aspects of this position.

"If it be conceded that the evidence offered was irrelevant, it was improper to attempt to impeach the plaintiff's veracity by the use of it. In Greenleaf on Evidence, 14th ed., §449, it is said: 'It is a well settled rule that a witness cannot be cross-examined as to

any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. And, if a question is put to a witness which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked the question, but it is conclusive against him' '': Hepworth v. Henshall, 153 Pa. 592, 597, 25 A. 1103. Also, see Launikitas v. Wilkes-Barre and W. V. T. Co., 241 Pa. 458, 88 A. 703; Conrad v. Werner, 94 Pa. Superior Ct. 37; and 2 Wigmore on Evidence, §§1000-1003.

For the purpose of determining the relevancy of the questions propounded to the witness on cross-examination, it is necessary to make further reference to the evidence. To support the contention of the claimant that she had purchased and paid for the goods in question, her husband was called as a witness and he undertook to show that his wife had bought and paid for the same. He was properly interrogated on cross-examination as to the source of the money which was used in payment. In that connection there was elicited testimony from which it could be found that it was A. Berliner's money that was used to make the purchase and that this money was part of $11,000 which he had received from the estate of a former wife about 1930. The contention of the execution creditor being that there had been a fraudulent scheme concocted between the husband and wife to defeat the creditors of A. Berliner and A. Berliner, Inc., it was proper to inquire as to the source of money alleged to have been used to pay for the goods. There was, however, nothing in the adjudication of the orphans' court to contradict his statement that he had obtained the money from the estate of his former wife or the amount which he said he had received. The respect as to which there was a contradiction is shown by the fol-

lowing question and answer: "Q. I ask you whether or not it is true that the orphans' court refused to award that claim to you because of the fact that you came into court with unclean hands—namely, that you had been guilty of fraud and, therefore, the court would not give you any relief? A. That is not true." If this question had been objected to and the evidence had been received and an exception taken to the ruling of the court, it would have been necessary to sustain the assignments of error to which we have referred above. The matter adjudicated by the orphans' court occurred before the marriage of the claimant and A. Berliner; in fact, it occurred approximately six years before the time the testimony was taken in this case and they were separate and distinct transactions. Being such, the matter was collateral to the issue being tried and it follows that the execution creditor could not contradict the statement made by the witness on cross-examination.

In the case of Conrad v. Werner, supra, we said (p. 40): "It will be observed that the matter elicited was obtained through cross-examination ...... the matter sought to be elicited by the defendant's counsel was a distinct and new fact collateral to the inquiry directed to the witness in the examination in chief and evidently introduced for the purpose of impeaching her testimony. Having proceeded in the line of inquiry and having elicited an answer responsive to the question, the defendant could not contradict the witness, but was bound by her answer."

As to the other aspect of the argument, we believe it to be equally well settled in Pennsylvania that a witness, subject to an exception hereafter referred to, may not be impeached by showing particular instances of misconduct disconnected with and collateral to the issue being tried, whether disclosed by cross-examina-

tion or extrinsic proofs. Although there is a somewhat different rule in many states, it has long been the rule in Pennsylvania and likewise in Massachusetts and California (2 Wigmore on Evidence, p. 375, n, 5) that a witness may not even be cross-examined as to such former acts of misconduct: Stout v. Rassel, 2 Yeates 334; Elliott v. Boyles, 31 Pa. 65; Com. v. Williams, 209 Pa. 529, 58 A. 922; Com. v. Payne, 205 Pa. 101, 54 A. 489; Marshall v. Carr, 271 Pa. 271, 114 A. 500. Perhaps the witness here should be placed in the category of a party rather than a witness for a party, but even so his credibility may not be impeached by evidence involving collateral matters. While in Com. v. Racco, 225 Pa. 113, 117, 73 A. 1067, a citation from Underhill on Criminal Evidence is set forth which states that a *party* may be cross-examined as to "collateral and apparently irrelevant" matters, the question involved was the right to show a conviction and sentence for a crime, an exception to the general rule. In the later case of Marshall v. Carr, supra, the question was directly raised by an offer to cross-examine a defendant as to a collateral matter and, speaking through Mr. Justice WALLING, the Supreme Court said (pp. 273, 274): "A witness may be interrogated as to his conviction of such an offense as affects his credibility: Com. v. Racco, 225 Pa. 113. But it is not proper practice to ask him as to his guilt of some alleged crime not connected with the case on trial and for which he was never convicted ...... The natural result of this improper cross-examination was to prejudice defendant with the jury and, hence, a new trial should be granted."

The general rule is subject to the exception that a witness may be interrogated as to his conviction and sentence for such crimes as affect his credibility (Com. v. Racco, supra), modified to some extent as to defend-

ants charged with any crime by the Act of March 15, 1911, P. L. 20 (19 PS 711); but even a defendant may still be impeached by introduction of a record of his conviction and sentence for certain crimes: Com. v. Doe, 79 Pa. Superior Ct. 162.

We are of the opinion that an adjudication or finding in a civil action against the contention of a party which even contradicts statements which he may have made on the trial of the case is not to be received as a substitute for conviction and sentence in a criminal action for the purpose of impeachment. It is not conceivable that every verdict of a jury or finding of a chancellor in a civil proceeding which may have involved a finding that reflected upon the witness should be accepted as casting such a stigma upon his character as to affect his credibility as a witness in another case. Such a conclusion would not be in harmony with the protection which the courts of this commonwealth have thrown about witnesses.

This was not harmless error. The execution plaintiff was endeavoring to show fraud on the part of Abraham Berliner and his wife, and it was extremely prejudicial to show that, in a matter unconnected with the present controversy and occurring about six years before the trial, a court had said in its adjudication that his conduct toward creditors had been fraudulent. We cannot pass this over as harmless error.

While we regret that it is necessary to grant a new trial in this case and our reason for such feeling will be apparent to anyone who reads the record, we are of the opinion that there was such a breach of a fundamental rule of evidence as cannot be overlooked.

Judgment of the lower court is reversed with a venire facias de novo.