## Krajsa v. Keypunch Inc.

*Donald E. Wieand Jr.,* for plaintiff.
*Mark Malkames,* for defendants.

YOUNG, *J.,* June 10, 1992—The plaintiff was an "at-will" employee of the defendants. He seeks damages for a wrongful discharge, alleging that he was fired because he told the Commonwealth of Pennsylvania that the defendants were violating their contracts with that govern-

ment, by billing for work not actually performed. The case was called for trial on January 6, 1992. That morning the defendant (Colfer) presented a motion for summary judgment and exclusion of evidence. The court ruled that the motion was untimely and proceeded with the trial.

The opening arguments were presented, and the plaintiff (Krajsa) was called as the first witness. Krajsa was on the verge of offering evidence regarding his wrongful discharge when Colfer objected. The jury was recessed, and the court, after argument from both sides and a careful review of the law, reluctantly sustained Colfer's objections, ruling that any testimony regarding the claim for wrongful discharge was irrelevant for the reasons discussed below.

The trial continued solely on Krajsa's claim for unpaid commissions. After four days of trial, the jury deliberated and found that a contract for commissions existed between the parties, but that Krajsa was not entitled to them. Krajsa then filed post-trial motions which are the subject of this opinion.

Krajsa argues that; the court improperly granted an involuntary non-suit before he had ended his case in chief. Further, he believes that the preclusion of the wrongful discharge claim was in error, and that he should have been permitted to impeach the credibility of Robert Colfer by the disallowed testimony.

This court did not grant an involuntary non-suit. The exclusion of the plaintiff's testimony concerning the bad acts of defendant Colfer was an evidentiary ruling. Under the facts of the case no cause of action existed, and any evidence presented on that issue was irrelevant.

Generally, there is no cause of action against an employer for termination of an at-will employment relation-

ship. *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Clay v. Advanced Computer Applications Inc.*, 522 Pa. 85, 89-90, 559 A.2d 917, 918 (1989), citing *Reuther v. Fowler & Williams Inc.*, 255 Pa. Super. 28, 386 A.2d 119 (1978). The termination must violate significant and recognized public policies which strike at the heart of a citizen's social right, duties and responsibilities. *Yetter v. Ward Trucking Corp.*, 401 Pa. Super. 467, 474, 585 A.2d 1022, 1026 (1991).

"The sources of public policy [which may limit the employer's right of discharge] include legislation; administrative rules, regulation, or decision; and judicial decision. In certain instances, a professional code of ethics may contain an expression of public policy.... Absent legislation, the judiciary must define the cause of action in case-by-case determinations." *Id.,* citing *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980).

In the few cases where the appellate courts have upheld a claim for the wrongful discharge of an at-will employee, the decision has been supported by a statute evidencing a clear legislative public policy. See, *Field v. Philadelphia Electric Co.*, 388 Pa. Super. 400, 565 A.2d 1170 (1989); *Hunter v. Port Auth. of Allegheny County,* 277 Pa. Super. 4, 419 A.2d 631 (1980); *Reuther, supra.*

Krajsa argues that a strong public policy exists to report to the appropriate authorities fraudulent billing practices and fraudulent non-performance of governmental contracts. Krajsa punctuates this by arguing that the Whis-

tleblower statute, formulated to prevent such waste and fraud, is applicable. This court agrees that individuals who contract with the government and who then perpetrate fraud and waste in fulfilling their services should be reported. Such activities do "strike at the heart of a citizen's social right, duty and responsibility." While the alleged acts of Colfer are reprehensible, there is no *specific statute* or judicially recognized public policy condemning it.

The Whistleblower statute defines employee as:

"Employee: A person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, *for a public body*." 43 P.S. §1422.

Krajsa was not employed by a public body but by a private citizen performing a public contract. While it may be viewed that this is a distinction without a difference, it is not this court's prerogative to legislate. If the legislature intended to afford the same protection to persons working for employers who have government contracts, it would have specifically enumerated such language. All that would have been needed was the addition of the words "for a public *or private* body." It is sometimes difficult to ascertain the intent of the legislative branch, but it may well have been concerned with opening up a flood of litigation between the millions of employers and their employees in the private sector.

A trial court should not distort a statute to afford relief not specifically included. It was Colfer's prerogative to terminate Krajsa without justification at any time. *Darlington v. General Electric*, 350 Pa. Super. 183, 504 A.2d 306 (1986).

Krajsa in the alternative argues that the information he gathered to prove his alleged claims of fraud and waste should have been allowed to impeach Colfer.

It is well established that evidence of specific bad acts may not be introduced in a civil case to impeach a witness. *Butler v. Flo-Ron Vending Co.,* 383 Pa. Super. 633, 557 A.2d 730 (1989), citing *Berliner v. Schoerberg,* 117 Pa. Super. 254, 178 A. 330 (1935). The court may not properly allow questions to be put to a witness concerning his guilt of some alleged crime for which he was never convicted. *Id.*

If any party was prejudiced, it was the defendant, because the jury was told by plaintiff's counsel in the openings about the fraud and waste Colfer perpetrated on the government.

The post-trial motion of the plaintiff is denied.